GLENN v. GERALD.

1. AMENDING PLEADINGS—ADMINISTRATOR.—When a creditor of an intestate brings an action in nature of a creditor's bill in his own name, but from the allegations and proof it appears that he is the administrator and intended to sue also as such, it is proper to permit complaint to be amended by alleging his representative capacity in caption.

2. BOARD—NURSING.—A NEPHEW may recover for board, nursing, &c., furnished his aunt, who came to his house to make a visit, but while there was taken too sick to be removed and so remained for seven months until her death.

3. PHYSICIAN.—A MARRIED WOMAN's separate estate is liable for the fees of a physician for treating herself whom she calls in.

4. ATTORNEY'S FEES—ADMINISTRATOR.—Attorney employed by administrator to bring action to sell lands in aid of assets, is entitled to fee out of such sale.

Before GAGE, J., Greenville, April, 1902. Affirmed.

Action by Thomas G. Glenn against George Gerald and other heirs at law of Lucy T. Gerald, and M. G. Conyers. From Circuit decree, Warren, Charles, Shuman and Ella Gerald appeal.

*Mr. Lewis Dorroh,* for appellant, cites: *Services originally rendered gratuitously cannot be afterwards charged for:* 1 Bay, 101; 2 Bail., 309. *There can be no implied contract of this kind:* 3 Strob., 321; 2 Bail., 309; 35 S. C., 551; 34 S. C., 255. *Permitting a relative to reside in a family as a friend, cannot afterwards be charged for:* Bail. Eq., 334; 37 S. C., 161; 38 S. C., 158. *As to liability of estate of deceased for medical claims:* 15 Ency., 877; 27 S. C., 500, 525; Con., art. XVII., sec. 9; 15 L. R. A., 717; 7 Ohio N. P., 378; 25 Am. R., 598; 32 Id., 243; 24 Am. St. R., 664.

*Mr. Wm. G. Sirrine,* for plaintiff, respondent, cites: *Acceptance of services by deceased requires compensation:* 57 S. C., 60, 572; 34 S. C., 256; 17 Ency., 1 ed., 340.

*Messrs. Shuman & Earle,* for Drs. Black and Bramlett, respondents, cite: *Contract being admitted, estate of wife is liable for physicians' fees:* 15 Ency., 1081; note 4; Con. 1895, art XVII., sec. 9; 44 Ohio St., 184; 146 Mass., 281; 15 R. I., 438; 14 R. I., 41.

June 14, 1902. The opinion of the Court was delivered by

· MR. JUSTICE POPE. Mrs. Lucy T. Gerald died *intestate* on the 25th March, 1901, her husband, George Gerald, surviving her. The plaintiff brought his action as an individual, though in his complaint he set up the fact that he had been appointed the administrator of her personal estate, which was less than $10. He made the defendants parties. The action was appealed from the probate court to the Circuit Court. The Circuit Judge ordered an amendment of the complaint by styling the plaintiff also as administrator. This constitutes one of the grounds of appeal.

The plaintiff charged his intestate board for seven months, aggregating $105. It appears that Mrs. Gerald went to his house to pay him a visit of a few days, but becoming ill she remained until she died. This charge of $105 was allowed as a valid claim against the estate of the intestate. This is made a ground of appeal. The intestate when she took sick sent for two physicians, who came at her request to render her medical assistance. The bill of one was $29, that of the other was $93. Both were allowed as valid claims against her estate. This is made a ground of appeal. A fee of $25 was allowed the attorney who filed the creditor's bill, and who was also the attorney for the administrator. This is made a ground of appeal. We will now consider these questions in their order.

In the fourth ground of appeal it is alleged: "His Honor erred in holding that plaintiff sued both as administrator and individually, and in giving the plaintiff leave to amend the complaint so as to show that the plaintiff sued as an administrator and individually, when he should have held that the caption and allegations of the complaint and the testimony showed that the plaintiff sued only as an individual, and not as administrator." In the complaint it is alleged that the plaintiff intestate had less than $10 worth of personal estate, while the plaintiff's claim was for $105, and that the real estate of the intestate would have to be sold in order to pay debts. The plaintiff set up the fact that he was the administrator. Sec. 194 of our Code of

Civil Procedure provides that "The Court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party; or by correcting a mistake in the name of a party, or a mistake in any other respect; or by inserting other allegations material to the case; or when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved." The Circuit Judge had this in mind when in his decree he provided: "Leave is given to plaintiff to change the caption of his complaint and amend the same so as to show more clearly that the action herein is brought by Thomas G. Glenn both as administrator and individually. I think the plaintiff intended to sue for himself and as administrator also; that appears from the allegations of the complaint. The evidence tends to show the same, and I think the complaint should be so amended as to make the allegation in the title of the cause." It seems to us that whenever the estate of a deceased person is brought into Court for settlement thereof, the personal representative of such deceased person should be a party to the action. Of course no reference is made to the changes in the law made by the legislature in the act of 1894, and the amendment to the same adopted in 1900 as to mortgages, all of which is fully set out and settled in the case of *Peeples* v. *Mims, ante.* For these reasons we do not think the Circuit Judge erred as herein complained. Let this exception be overruled.

We will next consider the first exception: "His Honor erred in allowing the claim of Thomas G. Glenn for board, nursing, and other things and services supplied the deceased, when he should have held that the deceased was a guest in the house of Thomas G. Glenn, received the board, nursing and other things and the services as a gratuity, and was under no contract or obligation to pay for the same." So much of the plaintiff's testimony wherein he sought to introduce the communications and transactions of the intestate with the plaintiff were clearly incompetent,

under sec. 400 of the Code of Civil Procedure. But when we disallow these declarations and transactions, there seems enough left of the testimony to support the Circuit Judge in his allowance of plaintiff's claim for the $105. It is true, Mrs. Gerald, the intestate, did go to the plaintiff's house to make a visit, for which plaintiff could make no charge, yet she was taken ill while there and elected to remain in his family. She received every attention while there. Her physicians finally decided that she could not be removed. Her husband acquiesced in her staying there for seven months. The husband paid for his own board in plaintiff's house during his wife's sickness. This is a circumstance to be considered. Our cases have held that a gratuity cannot be changed into a charge. *Sullivan* v. *Latimer,* 38 S. C., 158, and cases there cited. Still, no case has been found which goes to the length of holding that a visit for a day or two while in health can be construed into a right to remain without charge during seven months of illness. A nephew in blood does not owe such a duty to his aunt, who has a home and a husband near by the home of the nephew. That it would have been a nice mark of respect on the part of the nephew not to make a charge against his aunt, is undoubtedly true, when viewed from a moral standpoint, but does the law require the nephew to do so without compensation? We cannot say that it does. Hence we sustain the Circuit Judge and order the exception to be overruled.

We will next consider the *second* exception: "His Honor erred in allowing claims of Drs. Black and Bramlett, when he should have held that the deceased, in sending for the physicians, bound her husband and not herself to pay them for their services." It is admitted that Mrs. Gerald sent for the two physicians whose fees are in question. The amount of their fees is not controverted. It is contended, however, that the husband of Mrs. Gerald was responsible for these fees. It is not contended that the husband of Mrs. Gerald is able to pay these bills of the physicians. Indeed, it is in proof here that this husband con-

veyed by deed his interest in his wife's lot of land in the city
of Greenville to pay her burial expenses.    However the
latter may be, whether the husband is able to pay these medi-
cal fees or not, if he is chargeable with them as his debt and
not that of his wife, her estate would be freed therefrom.
But who did contract to pay these bills, the husband or the
wife?    Unquestionably, it was the wife's contract.    Was
she able to contract, being a married woman?    Sec. 9, of art.
XVII., of the Constitution of 1895, is as follows: "The real
and personal property of a woman held at the time of her
marriage or that she may hereafter acquire, either by gift,
grant, inheritance, devise or otherwise, shall be her separate
property, and she shall have all the rights incident to the
same to which an unmarried woman or a man is entitled.
She shall have the power to contract and be contracted with
in the same manner as if she were unmarried."    If a mar-
ried woman chooses to contract for the services of a lawyer
or physician, or to purchase provisions for herself, under the
provisions of the Constitution, she can do so.    We would be
correctly understood in making this declaration of the law
governing a married woman's contracts.    We do not mean
that it is not the duty of a married man to support his wife
and supply her needs of body and comfort; still, if a married
woman makes a contract for herself in any of these matters,
she has a right under the Constitution to do so.    As we
understand the facts of this case, this is precisely what Mrs.
Gerald did, and her separate estate is liable for such con-
tracts.    This exception is overruled.

3. Did the Circuit Judge err in his order for the sale of
these lands on the ground that no debts had been proved?
Under our holdings herein, there are demands against the
intestate's estate which have to be paid.    The personal
estate was only $2.95-100.    There is no other part of her
estate but this lot of land described in the pleadings.    The
reason assigned by the appellants is not sound, and the ex-
ception must be overruled.

5. Was it error in the Circuit Judge to sustain the fee of
16—64

$25 presented and allowed to W. G. Sirrine, Esq.   We do not think so; he was the attorney for the administrator. Under our decided cases, he falls under the restriction thrown around the allowance of such fees.   See *Turnipseed* v. *Sirrine as Executor,* 60 S. C., 272, and cases there cited and discussed.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.